IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GLENDA G. NICKERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:05cv1137-CSC |
| ) | (WO) |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Glenda G. Nickerson ("Nickerson"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Nickerson was 45 years old at the time of the hearing before the ALJ. (R.11). She has a high school education. (*Id*.). Following the hearing, the ALJ concluded that the plaintiff has a severe impairment of diabetes. (R. 14). He also found that Nickerson's hypertension, depression and anxiety were not severe impairments. (R. 13). The

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

ALJ concluded that because Nickerson could return to her past relevant work as an inspector and hand packager, she was not disabled. (R. 11 & 15).

**B. Plaintiff's Claims.** Nickerson presents three issues for the Court's review. As stated by Nickerson, they are as follows:

1. Did the ALJ err in finding that Claimant's mental condition did not constitute a "severe impairment"?

2. Did the ALJ err in disregarding all testimony of Claimant regarding pain by finding that she was not credible?

3. Did the ALJ err in finding that Claimant could return to her previous work without using a VE to address the effects of the nonexertional impairments of Claimant's mental condition and pain?

(Pl's Br. at 2).

### IV. Discussion

The plaintiff raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of all the plaintiff's arguments, except her first one regarding her depression and anxiety, because resolution of the first issue requires reversal and remand.[4]

The plaintiff argues that the ALJ erred in finding that her depression and anxiety did

---

[4] On remand, the Commissioner is encouraged to consider whether Ms. Nickerson's diabetes has progressed to the point of causing retinopathy and neuropathy. On more than one occasion, Nickerson described complications from diabetes including blurred vision and pain and tingling in her hands and feet. In addition, Nickerson testified that she has not had her vision checked in several years despite complaints of blurry vision and a history of diabetes. Not withstanding this evidence, Nickerson was not referred for a consultative physical examination to determine the extent of her diabetic neuropathy. On remand, a consultative physical evaluation appears to be warranted.

not constitute "severe" impairments. Based on that finding, the ALJ did not pursue the sequential evaluation concerning the plaintiff's depression and anxiety beyond step 2 of the analysis. Consequently, he did not consider the effect of her depression or anxiety on her ability to work. The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel.* 800 F.2d at 1031. Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a.)

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The plaintiff has the "burden of showing her impairment is "severe" within the meaning of the Act." *McDaniel,* 800 F.2d at 1030 - 31 ("Unless a claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.")

The ALJ determined that Nickerson's depression and anxiety were not severe because

> . . . her mental health condition is under good control with her conservative treatment. . . the evidence reveals that the claimant has mild restriction of activities of daily living. The claimant testified that she needed no help in taking care of her personal needs. She indicated on a questionnaire that her father helps her cook, clean, and do yard work. The claimant has mild difficulties in maintaining social functioning. She reports that she goes places with her father. The treatment notes from SpectraCare reveal that the claimant always related well and was cooperative. The claimant has mild difficulties maintaining concentration, persistence, or pace. The treatment records do not

>indicate that the claimant has experienced an episode of decompensation since her alleged onset date of disability. Therefore, the undersigned finds that the claimant's depression and anxiety are not severe impairments. In fact, the evidence well supports the conclusion that the claimant has no severe mental impairments.

(R. 13). Thereafter, the ALJ concluded that although

>the claimant complained of having frequent crying spells and panic attacks . . . the severity of her mental health complaints are not supported by the treatment records from SpectraCare. The evidence reveals that the claimant is treated conservatively with medication and therapy, and in fact has no severe mental impairment.

(R. 15). The first problem with the ALJ's determination, however, is that it substitutes the ALJ's opinion for that of the plaintiff's treating physician and therapist.

The ALJ has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). Where a consultative evaluation is needed to make an informed decision, it is error for an ALJ not to order such an evaluation. *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). After carefully reviewing the medical records, the court concludes that the ALJ erred in failing to fully develop the record regarding the plaintiff's possible mental impairments.

The ALJ found that Nickerson's depression and anxiety were not severe, in part because she was treated conservatively with medication and therapy. (R. 23). On her application for disability benefits, Nickerson asserted that she became disabled on November 26, 2003. (R. 62). In her disability appeal report, Nickerson alleged that her condition had

gotten worse – she was have crying spells "nearly every day," pain in her feet, and tingling in her hands. (R. 81). She also complained that her medication made her drowsy. (*Id*.) Finally, she asserted that she was depressed. (R. 86). Her medications include: Glucophage,[5] Avandia,[6] Glyburide,[7] Prinzide,[8] Lesol xl,[9] Zoloft,[10] Klonopin,[11] Lexapro,[12] and Amitriptyline.[13] (R. 106)

Nickerson has been treated for depression by her family care physician, Dr. Sewell, since August 3, 2004. (R. 112). On that date, Nickerson complained of not sleeping well, being very anxious and depressed, and being worried a lot. (*Id*). Dr. Sewell noted that Nickerson's depression, anxiety and insomnia were "largely situational related to husband

---

[5] Glucophage is used to treat non-insulin dependent diabetes by lowering blood glucose. PHYSICIANS' DESK REFERENCE, 833-34 (53rd ed. 1999).

[6] Avandia is used to treat type II Diabetes. PHYSICIANS' DESK REFERENCE, 1384 (61st ed. 2007).

[7] Glyburide is the generic name for Glynase which is also used to treat non-insulin dependent diabetes by lowering blood glucose. PHYSICIANS' DESK REFERENCE, 2488 (53rd ed. 1999).

[8] Prinzide is used to treat hypertension. PHYSICIANS' DESK REFERENCE, 2057 (61st ed. 2007).

[9] Lescol xl is used to reduce high cholesterol. PHYSICIANS' DESK REFERENCE, 2235 (61st ed. 2007).

[10] Zoloft is used to treat major depressive disorders as well as panic disorders in adults. PHYSICIANS' DESK REFERENCE, 2588 (61st ed. 2007). However, side effects include "worsening of their depression and/or the emergence of suicidal ideation and behavior (suicidality) or unusual changes in behavior." *Id*. at 2589.

[11] Klonopin is used to treat panic disorders. PHYSICIANS' DESK REFERENCE, 2778 (61st ed. 2007).

[12] Lexapro is also used to treat major depressive disorders and generalized anxiety disorders. PHYSICIANS' DESK REFERENCE, 2588 (61st ed. 2007). However, side effects again include "worsening of their depression and/or the emergence of suicidal ideation and behavior (suicidality) or unusual changes in behavior." *Id*. at 1191.

[13] Amitripyline is "an antidepressant with sedative effects" and is used to treat depression. PHYSICIANS' DESK REFERENCE, 3418 (53rd ed. 1999).

having a stroke and having moved out." (*Id*.)  Dr. Sewell prescribed Klonopin and Lexapro. (*Id*.).

On August 9, 2004, Nickerson presented to SpectraCare for mental health treatment. (R. 150-56).  At that time, her affect was constricted; her memory was impaired; she was tearful and agitated; and she was easily distracted.  (R. 150).  Dr. Curry Hammack diagnosed Nickerson with major depressive disorder, recurrent, moderate.  (R. 156).  He recommended a series of individual psychotherapy sessions to reduce her presenting symptoms.  (R. 155).

During her first therapy session on August 23, 2004, Nickerson was tearful.  (R. 149). She was prescribed Zoloft and Elavil as well as continued on Trazodone[14] for her insomnia. On September 7, 2004, although Nickerson was clear and cooperative, she was also depressed. (R. 147).  Her treatment plan identified her clinical needs as depression, anxiety, coping, and stress.  (R. 146).  Nickerson was prescribed Zoloft and Elavil.  (R. 144).  On October 19, 2004, Nickerson presented for therapy.  (R. 142).  She became tearful when discussing her situation. (*Id*.)  She reported that her husband had another stroke.  (*Id*.)  Her progress was described as moderate but the therapist noted a need to speak to the medical staff about Nickerson's anxiety.  (R. 141).

On November 10, 2004, Nickerson complained to Dr. Sewell that she was "[u]nder a considerable amount of stress in life."  (R. 111).  Dr. Sewell increased Nickerson's Klonopin prescription to help alleviate her insomnia.  (*Id*.).

---

[14] Trazodone is the generic name for Desyrel which is used to treat depression.  PHYSICIANS' DESK REFERENCE, 539 (53rd ed. 1999).

8

On January 31, 2005, Nickerson reported experiencing panic attacks after her husband verbally abused her. (R. 137). Nickerson's progress was stable, but she reported still not sleeping well. (*Id.*) On February 28, 2005, Nickerson was tearful during her therapy session. At that time, the therapist suggested more frequent therapy sessions but Nickerson declined as she was still taking care of her sick husband. (R. 136). Thereafter, on March 7, 2005, Dr. Sewell prescribed Lexapro because Nickerson was experiencing increased anxiety. (R. 128-29). On April 4, 2005, and May 4, 2005, her therapist noted that Nickerson was improving. (R. 135-34).

Notwithstanding Dr. Sewell's treatment, Dr. Hammack's diagnosis and the plaintiff's therapy at SpectraCare, the ALJ did not see the need to have Nickerson undergo a psychological evaluation by a consultative psychologist to determine the extent of her possible mental impairments. The court concludes that the ALJ improperly substituted his judgment for that of the plaintiff's treating physician and psychologist with respect to the question of whether the plaintiff has a mental impairment. Under these circumstances, the court concludes that there was sufficient information for the ALJ to require him to obtain additional psychiatric or psychological information about Nickerson's mental impairments so he could make an informed decision. "[I]n any case where there is evidence which indicates the existence of a mental impairment the . . . [Commissioner] may determine that the claimant is not disable only if the . . . [Commissioner] has made every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988). While the ALJ is entitled to make credibility determinations, the ALJ may

not substitute his judgment for the judgments of experts in their field of expertise. Psychiatrists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive judgment. The Tenth Circuit has made the following observation when considering an ALJ's rejection of a psychiatrist's opinion because it was based on a claimant's subjective complaints:

> This remarkable conclusion is made possible only by the ALJ's tacit equation of the psychiatrist's findings with plaintiff's subjective complaints, as if the former merely parroted the latter without any medical judgment/assessment intervening. This unstated assumption is unwarranted as a professional medical matter and unsupported by any unique facts specific to this case.

*Stephens v. Apfel*, 134 F.3d 383, 1998 WL 42524 (10th Cir. 1998) (Table). "'Even a "mild" mental impairment may "prevent [a] claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies."'" *Allen v. Sullivan*, 880 F.2d 1200, at 1202 (11th Cir. 1989). Consequently, the court concludes that the ALJ's determination that Nickerson's depression, anxiety and insomnia are not severe impairments is not supported by substantial evidence. In fact, that conclusion is contrary to the evidence. It is plain that the plaintiff has a mental impairment. What is not plain is the effect of that impairment.

For these reasons, the court concludes that the Commissioner inadequately developed the record in this case by failing to elicit medical evidence about the plaintiff's mental impairments. Thus, the case should be remanded to further develop the record regarding the extent of the plaintiff's mental impairments and how they affect her ability to work. Furthermore, the ALJ must consider every impairment alleged by the plaintiff and determine

whether the alleged impairments are sufficiently severe - either singly or in combination - to create a disability. *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's impairments must be considered in combination even when the impairments considered separately are not severe. *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985). In light of the ALJ's failure to fully and fairly consider all the evidence in the record in this case, the court concludes that the ALJ failed to meet his burden in this regard. The ALJ failed to properly evaluate all of the plaintiff's severe and non-severe impairments, singly and in combination, to determine whether she is disabled. As a result of his failure to consider the plaintiff's impairments in combination as well as his failure to fully develop the record concerning the plaintiff's mental impairment, doubt is necessarily cast upon the ALJ's conclusion that the plaintiff can return to her past relevant work.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order will be entered.

Done this 20th day of February, 2007.

                            /s/Charles S. Coody
                          CHARLES S. COODY
                          CHIEF UNITED STATES MAGISTRATE JUDGE